UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEE CHRISTAKIS, Individually and On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>   v.<br><br>FIFTH THIRD BANCORP, GREG D. CARMICHAEL, and TAYFUN TUZUN,<br><br>         Defendants. | **Case No.**<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Lee Christakis ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Fifth Third Bancorp ("Fifth Third" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Fifth Third securities between February 26, 2016, and March 6, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Fifth Third was founded in 1858 and is headquartered in Cincinnati, Ohio.  The Company operates as a diversified financial services company in the U.S.  As of June 30, 2019, the Company operated 1,207 full-service banking centers and 2,551 ATMs in Ohio, Kentucky, Indiana, Michigan, Illinois, Florida, Tennessee, West Virginia, Georgia, and North Carolina.

3.      Fifth Third is the indirect holding company of Fifth Third Bank, National Association ("Fifth Third Bank").

4.      Fifth Third Bank employed a "cross-sell" strategy for a number years, which continued through at least 2016.  Fifth Third Bank used this cross-sell strategy to increase the total number of products and services it provided to existing customers.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) as a result of Fifth Third Bank's aggressive incentive policies to promote its cross-sell strategy, Fifth Third Bank employees engaged in unauthorized conduct with customer accounts; (ii) since at least 2008, Fifth Third Bank, and by extension, Fifth Third, was aware of such unauthorized conduct and, thus, that it was violating relevant regulations and laws aimed at protecting its consumers; (iii)

2

Fifth Third failed to properly implement and monitor its cross-sell program, detect and stop misconduct, and identify and remediate harmed consumers; (iv) all the foregoing subjected the Company to a foreseeable risk of heightened regulatory scrutiny or investigation; (v) Fifth Third's revenues were in part the product of unlawful conduct and thus unsustainable; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.      On March 2, 2020, Fifth Third filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 10-K"). According to the 2019 10-K, U.S. Consumer Financial Protection Bureau ("CFPB") staff "notified Fifth Third that it intends to file an enforcement action in relation to alleged unauthorized account openings."

7.      As the market digested this information, Fifth Third's stock price fell $0.72 per share, or 2.95%, over the following trading sessions to close at $23.68 per share on March 5, 2020. However, the true scope of the Company's alleged wrongdoing, and potential liability with respect to unauthorized account openings, was left undisclosed in the 2019 10-K, and was actively downplayed by the Company, thereby causing the Company's stock price to continue to trade at artificially inflated prices throughout the remainder of the Class Period.

8.      Finally, on March 9, 2020, the CFPB announced that it had filed a lawsuit against Fifth Third Bank in federal court, disclosing significant additional information concerning its investigation into the Company that the Company had previously failed to disclose. Specifically, the CFPB "allege[d] that for several years," and until at least 2016, "Fifth Third [Bank], without consumers' knowledge or consent: opened deposit and credit-card accounts in consumers' names; transferred funds from consumers' existing accounts to new, improperly opened accounts; enrolled consumers in unauthorized online-banking services; and activated unauthorized lines of credit on

3

consumers' accounts." The CFPB further alleged that, "despite knowing since at least 2008 that employees were opening unauthorized consumer-financial accounts, Fifth Third [Bank] took insufficient steps to detect and stop the conduct and to identify and remediate harmed consumers." Consequently, the CFPB concluded that Fifth Third Bank "violated the Consumer Financial Protection Act's prohibition against unfair and abusive acts or practices as well as the Truth in Lending Act and the Truth in Savings Act and their implementing regulations."

9.      On this news, Fifth Third's stock price fell $0.64 per share, or approximately 3.5%, to close at $17.66 per share on March 11, 2020, and fell an additional $1.76 per share the following trading day to close at $15.90 per share on March 12, 2020—a total decline of 13.11%.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Fifth Third is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

4

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

15.     Plaintiff, as set forth in the attached Certification, acquired Fifth Third securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Fifth Third is incorporated in Ohio, with principal executive offices located at Fifth Third Center, 38 Fountain Square Plaza, Cincinnati, Ohio 45263. The Company's securities trade in an efficient market on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "FITB".

17.     Defendant Greg D. Carmichael ("Carmichael") has served as Fifth Third's President and Chief Executive Officer at all relevant times, and as the Company's Chairman of the Board of Directors since January 2018.

18.     Defendant Tayfun Tuzun ("Tuzun") has served as Fifth Third's Executive Vice President and Chief Financial Officer at all relevant times.

19.     Defendants Carmichael and Tuzun are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Fifth Third's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Fifth Third's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and

opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Fifth Third, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

21. Fifth Third and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22. Fifth Third was founded in 1858 and is headquartered in Cincinnati, Ohio. The Company operates as a diversified financial services company in the U.S. As of June 30, 2019, the Company operated 1,207 full-service banking centers and 2,551 ATMs in Ohio, Kentucky, Indiana, Michigan, Illinois, Florida, Tennessee, West Virginia, Georgia, and North Carolina.

23. Fifth Third is the indirect holding company of Fifth Third Bank.

24. Fifth Third Bank employed a "cross-sell" strategy for a number years, which continued through at least 2016. Fifth Third Bank used this cross-sell strategy to increase the total number of products and services it provided to existing customers.

### Materially False and Misleading Statements Issued During the Class Period

25. The Class Period begins on February 26, 2016. On February 25, 2016, during after-market hours, Fifth Third filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2015 (the

"2015 10-K"). For 2015, Defendants reported net income of $1.71 billion, or $2.01 per diluted share, on net revenue of $6.54 billion.

26.     With respect to Fifth Third's cross-sell strategy, the 2015 10-K represented that Fifth Third benefited from "cross-selling opportunities for [its] commercial products," and that the Company's various "business segments form synergies by taking advantage of cross-sell opportunities."

27.     The 2015 10-K also described Fifth Third's robust compliance risk management systems, touting that "Fifth Third focuses on managing regulatory compliance risk in accordance with [its] integrated risk management framework, which ensures consistent processes for identifying, assessing, managing, monitoring, and reporting risks"; that, "[t]o mitigate compliance risk, Compliance Risk Management provides independent oversight to ensure consistency and sufficiency, and ensures that lines of business, regions and support functions are adequately identifying, assessing and monitoring compliance risks and adopting proper mitigation strategies"; and that, "[a]dditionally, Compliance Risk Management implements key compliance programs and processes including but not limited to, risk assessments, key risk indicators program, issues tracking, [and] regulatory compliance testing and monitoring[.]"

28.     Additionally, the 2015 10-K touted the reporting aspects of Fifth Third's compliance risk management systems, assuring investors that the Company's highest levels of management were kept apprised of ongoing compliance issues identified within the Company and its subsidiaries. Specifically, the 2015 10-K stated that "Fifth Third . . . focuses on reporting and escalation of compliance issues to senior management and the Board"; that "[t]he Management Compliance Committee addresses Fifth Third-wide compliance issues, industry best practices, legislative developments, regulatory concerns, and other leading indicators of compliance risk";

and that "[t]he Management Compliance Committee reports to the Enterprise Risk Management Committee, which reports to Risk and Compliance Committee of the Board of Directors."

29.     Finally, the 2015 10-K contained generic, boilerplate representations regarding the risks it faced as an entity subject to CFPB oversight, stating, in relevant part, that "the CFPB . . . ha[s] the authority to compel or restrict certain actions by Fifth Third and its banking subsidiary"; that "Fifth Third, as well as other financial institutions more generally, have recently been subjected to increased scrutiny from government authorities . . . stemming from broader systemic regulatory concerns, including with respect to [*inter alia*] . . . consumer compliance and other prudential matters and efforts to ensure that financial institutions take steps to improve their risk management"; and that, "[i]n this regard, government authorities, including the bank regulatory agencies, are also pursuing aggressive enforcement actions with respect to compliance and other legal matters involving financial activities, which heightens the risks associated with actual and perceived compliance failures[.]"  Plainly, these risk warnings were generic "catch-all" provisions that were not tailored to Fifth Third's actual known risks with respect to Fifth Third Bank's ongoing violation of pertinent CFPB regulations.

30.     Appended as exhibits to the 2015 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") wherein the Individual Defendants certified that "[t]he [2015 10-K]  fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2015 10-K] fairly presents, in all material respects, the financial condition and results of operations of [Fifth Third]."

31.     On February 24, 2017, Fifth Third filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended

December 31, 2016 (the "2016 10-K"). For 2016, Defendants reported net income of $1.56 billion, or $1.93 per diluted share, on net revenue of $6.31 billion.

32. The 2016 10-K contained substantively the same statements referenced in ¶¶ 26-30, *supra*, pertaining to Fifth Third's cross-sell strategy, robust compliance risk management systems, the reporting aspects of such systems to top-level management, generic representations about the Company's risks as an entity subject to CFPB oversight, and SOX certifications signed by the Individual Defendants.

33. On February 28, 2018, Fifth Third filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K"). For 2017, Defendants reported net income of $2.18 billion, or $2.81 per diluted share, on net revenue of $7.02 billion.

34. The 2017 10-K contained substantively the same statements referenced in ¶¶ 26--30, *supra*, pertaining to Fifth Third's cross-sell strategy, robust compliance risk management systems, the reporting aspects of such systems to top-level management, generic representations about the Company's risks as an entity subject to CFPB oversight, and SOX certifications signed by the Individual Defendants.

35. On March 1, 2019, Fifth Third filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K"). For 2018, Defendants reported net income of $2.19 billion, or $3.06 per diluted share, on net revenue of $6.93 billion.

36. The 2018 10-K contained substantively the same statements referenced in ¶¶ 26-30, *supra*, pertaining to Fifth Third's cross-sell strategy, robust compliance risk management systems, the reporting aspects of such systems to top-level management, generic representations

about the Company's risks as an entity subject to CFPB oversight, and SOX certifications signed by the Individual Defendants.

37.     On January 30, 2020, Fifth Third filed a Current Report on Form 8-K with the SEC, to which Defendants appended as an exhibit a press release issued the same day (the "January 30 Press Release"). The January 30 Press Release advised investors of "changes to certain senior leadership roles in order to position the Company for continued success in executing its key strategic priorities," particularly in areas concerning risk and compliance. Specifically, the January 30 Press Release announced that "Frank Forrest, who has served as executive vice president and chief risk officer since 2014, moves into a new role as special advisor for risk and regulatory matters until December 31, 2020, at which time he will retire from the company," with Jamie Leonard, the Company's executive vice president and treasurer for the past six years, appointed his successor.

38.     While remaining silent on the reasons for the Chief Risk Officer's ("CRO") transition to a special advisory role and eventual retirement from Third Bank, the January 30 Press Release simultaneously touted his accomplishments for the Company. For example, the January 30 Press Release quoted Defendant Carmichael, who stated that "Frank has successfully led our risk management transformation and conversion to a national charter, and we look forward to his continued counsel and contributions as we move through 2020." He also stated that "[a]t the same time, Jamie [Leonard]'s depth of knowledge about our Company, our financials, our risk appetite and our strategic priorities, makes him a great fit for this role," and that "[h]is leadership over the past six years as treasurer to deliver strong results with a focus on through-the-cycle outperformance, as well as his leadership throughout the MB Financial integration, highlights the confidence we have in his capabilities in his new role."

39.     The statements referenced in ¶¶ 25-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) as a result of Fifth Third Bank's aggressive incentive policies to promote its cross-sell strategy, Fifth Third Bank employees engaged in unauthorized conduct with customer accounts; (ii) since at least 2008, Fifth Third Bank, and by extension, Fifth Third, was aware of such unauthorized conduct and, thus, that it was violating relevant regulations and laws aimed at protecting its consumers; (iii) Fifth Third failed to properly implement and monitor its cross-sell program, detect and stop misconduct, and identify and remediate harmed consumers; (iv) all the foregoing subjected the Company to a foreseeable risk of heightened regulatory scrutiny or investigation; (v) Fifth Third's revenues were in part the product of unlawful conduct and thus unsustainable; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

40.     On March 2, 2020, less than two months following Defendants' announcement of the eventual retirement of Fifth Third's CRO and the Company's placement of a suitable successor, Fifth Third filed its 2019 10-K, wherein Defendants disclosed that CFPB staff "notified Fifth Third that it intends to file an enforcement action in relation to alleged unauthorized account openings."

41.     As the market digested this information, Fifth Third's stock price fell $0.72 per share, or 2.95%, over the following few trading days to close at $23.68 per share on March 5, 2020.  However, the true scope of the Company's alleged wrongdoing, and potential liability with respect to unauthorized account openings, was left undisclosed in the 2019 10-K, and was actively

11

downplayed by the Company, thereby causing the Company's stock price to continue to trade at artificially inflated prices throughout the remainder of the Class Period.

42.     For example, in the sentence immediately following the disclosure regarding the CFPB's impending potential lawsuit, Defendants reassured investors that "Fifth Third believes that the facts do not warrant an enforcement proceeding and intends to defend itself vigorously if such an action should be filed," and also advised investors that "[t]he impact of this potential enforcement action has been reflected in our reasonably possible losses."

43.     Moreover, the 2019 10-K contained substantively the same statements referenced in ¶¶ 26-30, *supra*, pertaining to Fifth Third's cross-sell strategy, robust compliance risk management systems, the reporting aspects of such systems to top-level management, generic representations about the Company's risks as an entity subject to CFPB oversight, and SOX certifications signed by the Individual Defendants.

44.     The statements referenced in ¶¶ 42-43 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) as a result of Fifth Third Bank's aggressive incentive policies to promote its cross-sell strategy, Fifth Third Bank employees engaged in unauthorized conduct with customer accounts; (ii) since at least 2008, Fifth Third Bank, and by extension, Fifth Third, was aware of such unauthorized conduct and, thus, that it was violating relevant regulations and laws aimed at protecting its consumers; (iii) Fifth Third failed to properly implement and monitor its cross-sell program, detect and stop misconduct, and identify and remediate harmed consumers; (iv) all the foregoing subjected the Company to a foreseeable risk of heightened regulatory scrutiny or investigation; (v) the Fifth

12

Third's Class Period revenues were in part the product of unlawful conduct and thus unsustainable; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Fully Emerges

45.     On March 9, 2020, during pre-market hours, the CFPB announced that it had filed a lawsuit against Fifth Third Bank in federal court, alleging that Fifth Third Bank had violated the Consumer Financial Protection Act's prohibition against unfair and abusive acts or practices as well as the Truth in Lending Act and the Truth in Savings Act and their implementing regulations. Specifically, the CFPB's press release addressing this complaint stated, in relevant part:

> The [CFPB] today filed a lawsuit in federal district court in the Northern District of Illinois against Fifth Third Bank, National Association (Fifth Third). The Bureau alleges that for several years Fifth Third, without consumers' knowledge or consent: opened deposit and credit-card accounts in consumers' names; transferred funds from consumers' existing accounts to new, improperly opened accounts; enrolled consumers in unauthorized online-banking services; and activated unauthorized lines of credit on consumers' accounts. The Bureau alleges that Fifth Third violated the Consumer Financial Protection Act's prohibition against unfair and abusive acts or practices as well as the Truth in Lending Act and the Truth in Savings Act and their implementing regulations.

> The Bureau specifically alleges that for years and continuing through at least 2016, Fifth Third used a "cross-sell" strategy to increase the number of products and services it provided to existing customers; used an incentive-compensation program to reward selling new products; and conditioned employee-performance ratings and, in some instances, continued employment on meeting ambitious sales goals. The Bureau further alleges that, despite knowing since at least 2008 that employees were opening unauthorized consumer-financial accounts, Fifth Third took insufficient steps to detect and stop the conduct and to identify and remediate harmed consumers.

46.     On this news, Fifth Third's stock price fell $0.64 per share, or approximately 3.5%, to close at $17.66 per share on March 11, 2020, and fell an additional $1.76 per share the following trading day to close at $15.90 per share on March 12, 2020—a total decline of 13.11%.

47.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Fifth Third securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

49.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Fifth Third securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Fifth Third or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

50.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

51. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fifth Third;

- whether the Individual Defendants caused Fifth Third to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Fifth Third securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

54. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

15

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Fifth Third securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Fifth Third securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

55.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

56.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

59. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fifth Third securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Fifth Third securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

60. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Fifth Third securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Fifth Third's finances and business prospects.

61. By virtue of their positions at Fifth Third, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

17

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

62. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Fifth Third, the Individual Defendants had knowledge of the details of Fifth Third's internal affairs.

63. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Fifth Third. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Fifth Third's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Fifth Third securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Fifth Third's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Fifth Third securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

64.     During the Class Period, Fifth Third securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Fifth Third securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Fifth Third securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Fifth Third securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

65.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

67.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.     During the Class Period, the Individual Defendants participated in the operation and management of Fifth Third, and conducted and participated, directly and indirectly, in the conduct of Fifth Third's business affairs.  Because of their senior positions, they knew the adverse non-public information about Fifth Third's misstatement of income and expenses and false financial statements.

69.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Fifth Third's financial condition and results of operations, and to correct promptly any public statements issued by Fifth Third which had become materially false or misleading.

70.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Fifth Third disseminated in the marketplace during the Class Period concerning Fifth Third's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Fifth Third to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Fifth Third within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Fifth Third securities.

71.     Each of the Individual Defendants, therefore, acted as a controlling person of Fifth Third.  By reason of their senior management positions and/or being directors of Fifth Third, each

of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Fifth Third to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Fifth Third and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

72.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Fifth Third.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  April 7, 2020

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**THE SCHALL LAW FIRM**
Brian Schall
(*pro hac vice* application forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.    I, Lee Christakis, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Fifth Third Bancorp ("Fifth Third" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Fifth Third securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Fifth Third securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Fifth Third securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.


**Executed** _____
4/3/2020
                    **(Date)**


DocuSigned by:

Lee Christakis

06B3813FFE60490...
_____
                    **(Signature)**


Lee Christakis
_____
                    **(Type or Print Name)**

**Fifth Third Bancorp ("FITB")**                                                    **Lee Christakis**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 5/21/2018 | Purchase | 200 | $30.8500 |
| 3/19/2019 | Purchase | 200 | $28.1000 |
| 3/22/2019 | Purchase | 100 | $25.1250 |
| 1/28/2020 | Purchase | 1,000 | $28.6461 |
| 7/16/2018 | Sale | (1,200) | $29.3500 |
| 1/28/2020 | Sale | (1,000) | $29.0900 |